UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

**T.C.**,

Petitioner,

– against –

**KENNETH GENALO**, *in his official capacity as Field Office Director of New York, Immigration and Customs Enforcement*; **ANTOINE FRAZIER**, *in his official capacity as Acting Warden of the Metropolitan Detention Center*; **DAVID J. VENTURELLA**, *in his official capacity as Senior Official Performing the Duties of the Director, Immigration and Customs Enforcement*; **MARKWAYNE MULLIN**, *in his official capacity as Secretary, U.S. Department of Homeland Security*; **TODD BLANCHE**, *in his official capacity as Attorney General, U.S. Department of Justice*,

Respondents.

---

**MEMORANDUM DECISION AND ORDER**

26-CV-5000 (AMD)

**ANN M. DONNELLY**, United States District Judge:

On June 12, 2026, U.S. Immigration and Customs Enforcement ("ICE") arrested and detained the petitioner, who is currently being held in the Metropolitan Detention Center ("MDC") in Brooklyn, New York. (ECF No. 11 at 2–3; ECF No. 1 ¶ 36.) The petitioner filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. (ECF No. 1.) He seeks release from custody or, in the alternative, an individualized bond hearing. (*Id.* ¶ 7.) The Court grants the petitioner's request for a bond hearing, as explained below.

## BACKGROUND[1]

The petitioner is "an asylum seeker from Georgia who came to the United States after facing political violence in his home country." (ECF No. 1 ¶ 1.) On April 28, 2022, an agent from Customs and Border Protection ("CBP") encountered the petitioner and determined he had entered the country unlawfully from Mexico. (ECF No. 11 at 1; *see also* ECF No. 11-2.) On April 30, 2022, the petitioner was served a Form I-200A, Order of Release on Recognizance ("OREC") and released on his own recognizance. (ECF No. 11 at 1; *see also* ECF No. 11-3.) He was also issued and served a Notice to Appear ("NTA"), Form I-862, which charged him as inadmissible pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). (ECF No. 11 at 2; ECF No. 11-4.) The NTA directed him to appear before an immigration judge in Philadelphia on April 11, 2023. (ECF No. 11-4 at 2.) The Department of Homeland Security also "placed [him] into the Department's Alternatives to Detention ('ATD') program and Intensive Supervision Appearance Program ('ISAP')," which subjected him to reporting requirements, "including being required to attend regular ICE check-in appointments in addition to his hearings for removal proceedings in the immigration court." (ECF No. 1 ¶ 2.) The petitioner "settled in Philadelphia," and applied for asylum, withholding of removal, and Convention Against Torture ("CAT") protection. (*Id.* ¶ 30.) That application is currently pending. (*Id.* ¶ 37.)

---

[1] The Court bases the discussion of the facts, which are undisputed unless otherwise noted, on the parties' submissions, including exhibits. *See Hyppolite v. Noem*, 808 F. Supp. 3d 474, 479 n.1 (E.D.N.Y. 2025); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 402 n.1 (S.D.N.Y. 2025).

Having reviewed all the submissions, the Court finds that the petition "present[s] only issues of law," and it may, therefore, be adjudicated without a hearing. *See* 28 U.S.C. § 2243 (directing courts to "determine the facts, and dispose" of habeas petitions expeditiously, "as law and justice require"); *see also Tumba v. Francis*, 813 F. Supp. 3d 394, 397 n.1 (S.D.N.Y. 2025).

On August 25, 2026, the petitioner was arrested for shoplifting in New Jersey. (*See* ECF No. 12-1; ECF No. 11 at 2.) On August 26, 2025, the "Pacific Enforcement Response Center ('PERC') referred [the petitioner's] case to the local ICE office for review." (ECF No. 11 at 2.) On October 15, 2025, the petitioner pled guilty to "interfering with the inhabitants of the township." (*See* ECF No.12-1; ECF No. 12 at 3.) The shoplifting charge was dismissed. (*See* ECF No.12-1; ECF No. 12 at 3.) On April 9, 2026, the petitioner was arrested for retail theft in Pennsylvania. (*See* ECF No. 12 at 3-4; ECF No. 12-2 at 1.) No charges were filed in Pennsylvania against the petitioner, however, until August 27, 2026 — thirteen days after he filed this petition. (ECF No. 12-2.)

On June 8, 2026, ICE issued a Form I-200 Warrant of Arrest for the petitioner "based on the PERC referral, ongoing removal proceedings, records checks which showed that Petitioner lacked lawful immigration status, and Petitioner's criminal arrests." (ECF No. 11 at 2.) On June 12, 2026, the petitioner went to a "routine in-person ICE check-in appointment" in Manhattan. (ECF No. 11 at 2; ECF No. 1 ¶ 34.)[2] ICE took him into custody and detained him at first at the Delaney Hall Detention Facility in Newark, New Jersey. (ECF No. 11-1 ¶¶ 13-14.) On June 18, 2026, ICE transferred the petitioner to the MDC. (*Id.* ¶ 14.)

On August 14, 2026, the petitioner's counsel filed a petition for habeas relief. (ECF No. 1.) On August 17, 2026, the Court ordered the government to show cause why the petition should not be granted. (*ECF Order to Show Cause dated Aug. 17, 2026*.) The government

[2] The petitioner claimed in his petition that the check-in was on June 18, 2026. (*See* ECF No. 1 ¶ 34.) He agreed in his reply that the date was June 12, 2026. (*See* ECF No. 12 at 3, 10.) The parties also disagree about where the petitioner went to check in; the petitioner said he went to 26 Federal Plaza, while the government says he went to 7 Elk Street. (*See* ECF No. 1 ¶ 34; ECF No. 11 at 2.) Both addresses are in Manhattan.

responded to the order to show cause on August 25, 2026. (ECF No. 11.) The petitioner replied on August 28, 2026. (ECF No. 12.)

## LEGAL STANDARD

Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18-CV-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## DISCUSSION

### I. Statutory Basis for Detention

The government argues that the petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(E). (ECF No. 11 at 3.) As amended by the Laken Riley Act, Section 1226(c)(1)(E) "makes noncitizens subject to mandatory detention if (1) they are inadmissible under certain provisions in 8 U.S.C. § 1182 and (2) are charged with, arrested for, convicted of, or admit to having committed certain crimes." *J.U. v. Maldonado*, 805 F. Supp. 3d 482, 495 (E.D.N.Y. 2025). Detention is mandatory when a noncitizen in removal proceedings "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." 8 U.S.C. § 1226(c); *see also Rueda Torres v. Francis*, No. 25-CV-8408, 2025 WL 3168759, at *5 (S.D.N.Y. Nov. 13, 2025), *appeal withdrawn sub nom. Torres v. Genalo*, No. 26-115, 2026 WL 1091200 (2d Cir. Apr. 15, 2026). The government argues that the petitioner is

being detained under Section 1226(c)(1)(E) because "he has been charged as inadmissible under INA §212 (a)(6)(A)(i)," and he was arrested in New Jersey for shoplifting and in Pennsylvania for retail theft. (ECF No. 11 at 3–4.)

The petitioner does not contest that he is inadmissible under 8 U.S.C. § 1182. He argues, however, that he is not subject to mandatory detention under Section 1226(c)(1)(E) because he "was not facing any pending theft-related charges at the time of his arrest nor for the last two and half months he has been languishing in custody." (ECF No. 12 at 3.) Though an ICE officer said in a sworn declaration that the petitioner's New Jersey shoplifting charges "are still pending" (ECF No. 11-1 ¶ 9), the petitioner claims this is false (ECF No. 12 at 3). In fact, the records the petitioner submitted show that the shoplifting charge is not pending, and that it was dismissed after the petitioner pled guilty on October 15, 2025 to "interfering with the inhabitants of the township." (*See* ECF No.12-1; ECF No. 12 at 3.) Courts in this circuit have concluded that "the text of § 1226(c)(1)(E)(ii) does not provide for mandatory detention where, as here, charges have been dropped." *Rueda Torres*, 2025 WL 3168759, at *5; *see also Oldacre v. Arteta*, No. 26-CV-2672, 2026 WL 1718184, at *2 (S.D.N.Y. June 12, 2026) (collecting cases). Accordingly, the dismissed shoplifting charge is not a basis for mandatory detention under Section 1226(c)(1)(E).

The petitioner argues that the Pennsylvania arrest does not justify mandatory detention under Section 1226(c)(1)(E) because "[t]here were no pending charges against [the petitioner] in Pennsylvania until yesterday, August 27, 2026, when a criminal complaint was suddenly filed a day after Respondent's opposition and more than four months after the arrest." (ECF No. 12 at 3–4.) The petitioner was arrested on April 9, 2026 for retail theft in violation of 18 Pa. C.S.A. §

3929(a)(1). (*See* ECF No. 11 at 4; ECF No. 12-2 at 1.)[3] He was not charged with retail theft until August 27, 2026. (ECF No. 12-2.) Thus, when ICE arrested and detained him, he had only been arrested for retail theft. According to the petitioner, detention is unlawful because "at the time of [his] arrest and throughout his detention, he was not facing criminal charges that would trigger mandatory detention under LRA." (ECF No. 12 at 6.) It is true that the lawfulness of the petitioner's detention must be assessed from the point when ICE arrested him on June 12, 2026. *See Inestroza Carbajal v. Frazier*, No. 26-CV-2778, 2026 WL 1309265, at *1 (E.D.N.Y. May 12, 2026) ("[A]n executive agency, like ICE, is bound by the bases it used to justify its decision — here the arrest and detention — in the first instance, not reasons it comes up with afterwards."); *see also Rueda Torres*, 2025 WL 3168759, at *5. However, Section 1226(c)(1)(E) applies to noncitizens who are merely "arrested for" for certain crimes, even though the charge has not been proved, and the noncitizen might ultimately be exonerated. *See* 8 U.S.C. § 1226(c)(1)(E); *see also Oldacre v. Arteta*, 26-CV-2672, 2026 WL 1398650, at *4 (S.D.N.Y. May 19, 2026), *amended in part*, 26-CV-2672, 2026 WL 1718184 (S.D.N.Y. June 12, 2026); *Hanson v. Joyce*, No. 26-CV-3326, 2026 WL 2058445, at *2 (S.D.N.Y. July 16, 2026). Accordingly, the petitioner meets the statutory requirements for mandatory detention under Section 1226(c)(1)(E).

## II. Due Process

The petitioner argues that in any event "mandatory detention under the [Laken Riley Act] based solely on the April 2026 arrest without charges or even now, with charges filed yesterday,

[3] Section 3929(a)(1) provides that a person "is guilty of a retail theft if he . . . takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof." 18 Pa. Stat. and Cons. Stat. Ann. § 3929. The petitioner does not argue that his charge of retail theft in violation of Section 3929(a)(1) is not a predicate offense requiring mandatory detention under Section 1226(c)(1)(E). (*See* ECF No. 12.)

violates [his] due process rights because he has not been able to contest the allegations against him or otherwise show that he is not a danger or flight risk." (ECF No. 12 at 6.) The Due Process Clause of the Fifth Amendment prevents the Government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). It is well established that this protection extends to noncitizens, including those in removal proceedings. *See id.* at 693 ("[O]nce an alien enters the country . . . the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."). "The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008)).

In this circuit, courts assessing the adequacy of the process afforded in the civil immigration context apply the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Velasco Lopez*, 978 F.3d at 851. Under that test, the Court balances: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "Several district courts have applied the *Mathews* factors to habeas petitions brought by those detained under the Laken Riley Act on the basis of unproven, disputed criminal allegations and concluded that mandatory detention,

without opportunity for a bond hearing, violated those petitioners' due process rights." *Peralta-Malla v. Mullin*, No. 26-CV-2903, 2026 WL 1346325, at *3 (S.D.N.Y. May 14, 2026) (collecting cases). As explained below, the Court concludes that application of the *Mathews* factors to the petitioner's case compels the same conclusion.

The first *Mathews* factor — the private interest affected by the government's action — favors the petitioner, who invokes "the most significant liberty interest there is — the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851. In *Ahmed v. Maldonado*, Judge Orelia Merchant considered how the *Mathews* factors — particularly the weight of the petitioner's interest — applied to Ahmed, who had been detained for over two months pursuant to Section 1226(c)(1)(E) based on a pending petit larceny charge. *See Ahmed v. Maldonado*, No. 26-CV-3656, 2026 WL 2042849, at *3–6 (E.D.N.Y. July 15, 2026). Judge Merchant found that the petitioner's "relatively brief period of detention reduce[d] the weight of his interest," so "the first prong of the *Mathews* test favor[ed] Petitioner, but not dispositively at this stage in the analysis." *Id.* at *4 (discussing *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024), *cert. granted sub nom. Genalo v. Black*, No. 25-886, 2026 WL 1718025 (U.S. June 15, 2026)); *see also Oldacre*, 2026 WL 1398650, at *6. The petitioner in this case has been detained since June 12, 2026, almost three months. Under these circumstances, the first *Mathews* factor weighs in the petitioner's favor, but not as heavily as it would if the detention were longer.

As for the second *Mathews* factor — the value of additional safeguards — the record demonstrates that the government has made no individualized determination to justify detaining the petitioner. "Civil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 317 (E.D.N.Y. 2025)

(quoting *Zadvydas*, 533 U.S. at 690). In *Black*, the Second Circuit observed that "the almost nonexistent procedural protections in place for section 1226(c) detainees markedly increased the risk of an erroneous deprivation of Petitioners' private liberty interests." *Black*, 103 F.4th at 152. "The risk of erroneous deprivation is exacerbated for people like Petitioner who are detained pursuant to criminal arrest or charging under Section 1226(c)(1)(E), as 'liberty is withdrawn at the accusation stage, automatically, and without individualized determination.'" *Ahmed*, 2026 WL 2042849, at *5 (quoting *Peralta-Malla*, 2026 WL 1346325, at *5). There is, moreover, "a substantial risk of erroneous deprivation given the lack of record evidence demonstrating Petitioner's dangerousness or risk of flight." *Id.*

In this case, the petitioner was arrested in April 2026 for retail theft — a non-violent offense — a crime for which he was not charged until August 27, almost immediately after he filed this petition. (*See* ECF No. 12 at 3–4; ECF No. 12-2.) During the approximately four months between the arrest and the charge, the petitioner has not demonstrated that he is dangerous or a flight risk. He has been in the United States for over four years, and maintains that he "dutifully attended" check-ins with immigration officials and proceedings in immigration court, which the government does not contest. (*See* ECF No. 1 ¶¶ 29–30, 33.) Indeed, he went for a routine check-in with ICE after the April arrest. (*See id.* ¶ 34.) Therefore, "almost *any* additional procedural safeguards at some point in the detention would add value. The most obvious of these . . . would be an individualized bond hearing at which an [immigration judge] can consider the noncitizen's dangerousness and risk of flight." *Black*, 103 F.4th at 153. Accordingly, the second factor weighs in the petitioner's favor.

As for the third *Mathews* factor, "the Government has well-established interests in '(1) ensuring [a] noncitizen's appearance at proceedings, and (2) protecting the community from

noncitizens who have been involved in crimes that Congress has determined differentiate them from others.'" *Ahmed*, 2026 WL 2042849, at *5 (quoting *Black*, 103 F.4th at 153). But that interest "is not well served where, as here, a noncitizen is detained without a bond hearing — and thus an opportunity for an immigration judge to determine whether he poses a danger to the community or a flight risk — simply because he was arrested for, and charged with, an offense under § 1226(c)." *Peralta-Malla*, 2026 WL 1346325, at *5 (quoting *Alcantara Guerrero v. Wesling*, 832 F. Supp. 3d 104, 112 (D. Mass. 2026)). Therefore, this factor also favors the petitioner.

Accordingly, the Court finds that the petitioner, "who is detained solely because of disputed, unresolved criminal charges, who was never determined to be dangerous or a flight risk, and whose length of future detention is unknown, is entitled to a bond hearing under the Due Process Clause." *Peralta-Malla* 2026 WL 1346325, at *6; *see also Ahmed*, 2026 WL 2042849, at *6 (concluding that "Petitioner's detention without a bond hearing [was] 'unreasonably prolonged' under *Black*" and that "Petitioner's two-month detention without a bond hearing under Section 1226(c)(1)(E) violates his due process rights.").[4] The petitioner's continued detention, in the absence of a bond hearing, is unlawful.

[4] The petitioner does not address — and the Court does not decide — whether Section 1226(c)(1)(E) is unconstitutional on its face.

## CONCLUSION

Accordingly, the petition for a writ of habeas corpus under 28 U.S.C. §2241 is granted. By September 11, 2026, the government is directed to provide the petitioner with a bond hearing before an immigration judge. At the bond hearing, the Government bears the burden of demonstrating by clear and convincing evidence that the petitioner is either a danger to the community or a flight risk; the immigration judge must also consider whether there are alternatives to detention, and in determining whether to set a bond amount, the immigration judge must consider the petitioner's ability to pay. *See Black*, 103 F.4th at 155–58. If the government does not give the petitioner a bond hearing by September 11, 2026, it must release him from custody immediately. The government is directed to submit a letter by September 14, 2026 certifying compliance with this Order; in that letter, the government must report the date the hearing took place and its outcome. The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
September 8, 2026